**UNITED STATES DISTRICT COURT** **EASTERN DISTRICT OF TEXAS**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| *versus* | § | CASE NO. 1:22-CR-114 |
| | § | |
| CHASTITY SHYNE BROUSSARD | § | |

**MEMORANDUM AND ORDER**

Pending before the court is Defendant Chastity Shyne Broussard's ("Broussard") *pro se* Motion for Early Termination of Supervised Release (#37) wherein Broussard seeks early termination of her three-year term of supervised release. Broussard's United States Probation and Pretrial Services ("Probation") officer in the Eastern District of Texas reviewed the file and is opposed to Broussard's request for early termination of her term of supervised release and recommends that her supervision be continued as ordered. The United States Attorney's Office in the Eastern District of Texas is also opposed to the early termination of Broussard's supervised release. Having considered the motion, the position of Probation, the Government's position, the record, and the applicable law, the court is of the opinion that Broussard's motion should be denied.

I. Background

On November 2, 2022, a federal grand jury in the Eastern District of Texas, Beaumont Division, returned an Indictment charging Broussard with possession of a firearm by a prohibited person (#2). Broussard appeared with counsel before the court on February 28, 2023, and pleaded guilty to this offense without a written plea agreement. On October 20, 2023, the court sentenced Broussard to a term of twenty-one months' imprisonment to be followed by a three-year term of

supervised release (#34). On April 19, 2024, Broussard began serving her term of supervised release, which is projected to expire on April 18, 2027.

In her motion, Broussard, age 45, asks the court to terminate her supervision at this time, having served almost two and a half years of her three-year term of supervised release. Broussard maintains that since the beginning of her supervision, she has complied fully with all terms and conditions of her supervised release. She asserts that she has a commercial drivers license and has held a job since being released. Broussard explains that she hopes to continue her progress by starting a new career as a tankerman on vessels, which requires significant travel.

II. Analysis

Title 18, United States Code, Section 3583(e) authorizes a district court to terminate supervised release at any time after the expiration of one year if, after considering certain of the factors set forth in Section 3553(a),[1] "it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice." 18 U.S.C. § 3583(e)(1); *accord United States v. Johnson*, 529 U.S. 53, 59-60 (2000); *United States v. Peters*, 856 F. App'x 230, 233 (11th Cir. 2021); *Herndon v. Upton*, 985 F.3d 443, 446 n.5 (5th Cir. 2021); *United States v. Melvin*, 978 F.3d 49, 52 (3d Cir. 2020); *United States v. Cochran*, 815 F. App'x 361, 363 (11th Cir. 2020); *United States v. Davies*, 746 F. App'x 86, 88-89 (3d Cir. 2018). In addition, the

[1] These factors include: the nature and circumstances of the offense and the defendant's history and characteristics; the need to afford adequate deterrence to criminal conduct; the need to protect the public from further crimes of the defendant; the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; the kinds of sentences and sentencing ranges established for defendants with similar characteristics under applicable Sentencing Commission guidelines and policy statements; any pertinent policy statement of the Sentencing Commission in effect on the date of sentencing; the need to avoid unwarranted disparities among defendants with similar records who have been found guilty of similar conduct; and the need to provide restitution to any victims of the offense. 18 U.S.C. §§ 3553(a), 3583(e).

United States Sentencing Guidelines list supplemental factors that the court may wish to consider when determining whether to terminate the remaining term of supervised release.[2] "Early termination of supervised release is not an entitlement." *United States v. George*, 534 F. Supp. 3d 926, 927 (N.D. Ill. 2021). Instead, the defendant bears the burden of demonstrating that early termination is warranted. *Id.*; *United States v. Luna*, No. 1:95-cr-05036-AWI, 2018 WL 10156108, at *1 (E.D. Cal. Mar. 12, 2018), *aff'd*, 747 F. App'x 561 (9th Cir. 2018). Early termination "is not warranted as a matter of course." *United States v. Morris*, No. 3:99-cr-264-17 (VAB), 2022 WL 3703201, at *3 (D. Conn. Aug. 26, 2022). "To the contrary, it is only 'occasionally' justified." *United States v. Shellef*, No. 03-CR-0723 (JFB), 2018 WL 3199249, at *1 (E.D.N.Y. Jan. 9, 2018) (quoting *United States v. Lussier*, 104 F.3d 32, 36 (2d Cir. 1997)). In fact, in *United States v. Bowe*, the United States Court of Appeals for the Fourth Circuit stated that "Congress has manifested an intent to require full service of supervised release for rehabilitative purposes." 309 F.3d 234, 240 (4th Cir. 2002) (citing *Johnson*, 529 U.S. at 53).

District courts enjoy considerable discretion in determining when the interest of justice warrants early termination. *United States v. Tacker*, 672 F. App'x 470, 471 (5th Cir. 2017); *United States v. Jeanes*, 150 F.3d 483, 484-85 (5th Cir. 1998); *United States v. Lynn*, No.

---

[2] Specifically, the Guidelines list: (i) any history of court-reported violations over the term of supervision; (ii) the ability of the defendant to lawfully self-manage (e.g., the ability to problem-solve and avoid situations that may result in a violation of a condition of supervised release or new criminal charges); (iii) the defendant's substantial compliance with all conditions of supervision; (iv) the defendant's engagement in appropriate prosocial activities and the existence or lack of prosocial support to remain lawful beyond the period of supervision; (v) a demonstrated reduction in risk level or maintenance of the lowest category of risk over the period of supervision; and (vi) whether termination will jeopardize public safety, as evidenced by the nature of the defendant's offense, the defendant's criminal history, the defendant's record while incarcerated, the defendant's efforts to reintegrate into the community and avoid recidivism, any statements or information provided by the victims of the offense, and other factors the court finds relevant. U.S.S.G. § 5D1.4, Application Note B.

S90-00053(P), 2022 WL 2446328, at *3 (S.D. Miss. May 31, 2022); *see Melvin*, 978 F.3d at 52. Compliance with the terms of supervised release and with the law alone is not enough to merit early termination; such conduct is expected and required. *United States v. Taylor*, 729 F. App'x 474, 475 (7th Cir. 2018) ("[M]ere compliance with the terms of supervised release is expected, and without more, insufficient to justify early termination under 18 U.S.C. § 3583(e)."); *United States v. Bondy*, No. 19-232, 2026 WL 1282742, at *2 (E.D. La. May 11, 2026) ("[F]ull compliance . . . is merely what is expected of all people serving terms of supervised release." (quoting *Karacsonyi v. United States*, No. 97-1220, 1998 WL 401273, at *1 (2d Cir. June 10, 1998))); *United States v. Seymore*, No. CR 07-358, 2023 WL 3976200, at *1 (E.D. La. June 13, 2023) ("[C]ourts have generally held that something more than compliance with the terms of [supervised release] is required to justify an early termination . . . ." (quoting *United States v. Smith*, No. 10-cr-53-DPJ-FKB, 2014 WL 68796, at *1 (S.D. Miss. Jan. 8, 2014))); *Lynn*, 2022 WL 2446328, at *4 (although the defendant adhered to the conditions of his release, a balancing of the 18 U.S.C. § 3553(a) factors did not support early termination, noting that the defendant "engaged in constant serious criminal behavior when he was given chances before"); *United States v. Sandles*, No. 11-CR-204-PP, 2021 WL 3080995, at *3 (E.D. Wis. July 21, 2021) ("[C]ourts have held 'that the conduct of the defendant necessary to justify early termination should include more than simply following the rules of supervision; otherwise, every defendant who avoided revocation would be eligible for early termination.'" (quoting *United States v. O'Hara*, No. 00-cr-170, 2011 WL 4356322, at *3 (E.D. Wis. Sept. 16, 2011))); *United States v. Boudreaux*, No. 2:19-CR-00377-01, 2020 WL 7635708, at *1 (W.D. La. Dec. 22, 2020); *United States v. Pittman*, No. 3:15-CR-221-O(1), 2020 WL 6564724, at *2 (N.D. Tex. Nov. 9, 2020) (citing 18

U.S.C. § 3583(e)(1)) (finding that the conduct of the defendant did not warrant early termination of supervised release, as the defendant sought relief based on his circumstances and the alleged conduct of others); *see United States v. Berger*, No. CR 09-308, 2021 WL 2354517, at *5 (W.D. Pa. June 9, 2021) ("Compliance with the conditions of supervision, including refraining from engaging in criminal conduct and paying restitution, however, is required behavior while serving a term of supervised release."). As courts have observed, "if every defendant who complied with the terms of a supervised release were entitled to early termination, 'the exception would swallow the rule.'" *United States v. Kassim*, No. 15 Cr. 554-3 (KPF), 2020 WL 2614760, at *2 (S.D.N.Y. May 22, 2020) (citing *United States v. Medina*, 17 F. Supp. 2d 245, 247 (S.D.N.Y. 1998)).

While the court need not find extraordinary, compelling, or changed circumstances to justify an early termination of supervised release, this does not mean that such circumstances are irrelevant to ruling on a motion under § 3583(e)(1). *United States v. Ferriero*, No. 13-0592 (ES), 2020 WL 6701469, at *2 (D.N.J. Nov. 13, 2020) (citing *Melvin*, 978 F.3d at 53); *accord United States v. Parisi*, 821 F.3d 343, 347 (2d Cir. 2016). This is because if a sentence was "sufficient, but not greater than necessary" when first pronounced, pursuant to 18 U.S.C. § 3553(a), it would be expected that something has changed that would justify an early end to a term of supervised release. *Melvin*, 978 F.3d at 53; *United States v. Jackson*, No. 11-55, 2022 WL 2789870, at *2 (W.D. Pa. July 15, 2022); *United States v. Santoro*, No. 21-76 (MAS), 2022 WL 37471, at *2 (D.N.J. Jan. 4, 2022); *Ferriero*, 2020 WL 6701469, at *2. In other words, extraordinary circumstances may be sufficient to justify early termination of a term of supervised release, but they are not necessary for such a termination. *Melvin*, 978 F.3d at 53; *United States v.*

*McClamma*, 676 F. App'x 944, 947 (11th Cir. 2017) ("New or unforeseen circumstances can justify a modification, but such circumstances are not necessary."); *Parisi*, 821 F.3d at 347 (recognizing that "changed circumstances may in some instances justify a modification" of a term of supervision). Nonetheless, "'generally, early termination of supervised release under § 3583(e)(1)' will be proper 'only when the sentencing judge is satisfied that new or unforeseen circumstances' warrant it." *Melvin*, 978 F.3d at 53 (quoting *Davies*, 746 F. App'x at 89); *United States v. Baptiste*, No. 98-207, 2025 WL 871520, at *1 (E.D. La. Mar. 20, 2025) (noting that early termination is generally warranted "only in cases where the defendant shows changed circumstances, such as exceptionally good behavior" (quoting *United States v. Jones*, No. V-11-21, 2013 WL 2417927, at *1 (S.D. Tex. June 4, 2013))); *Smith*, 2014 WL 68796, at *1.

Courts have generally denied requests for early termination of supervised release where a defendant claims that early termination will improve her employment prospects without providing concrete support for this contention. *See United States v. Lagone*, No. 10-CR-818 (JFB), 2017 WL 606016, at *4 (E.D.N.Y. Feb. 15, 2017) (denying early termination in part because the defendant "merely generally contended that early termination would bolster his job prospects" and did not provide more detailed information); *United States v. Olivieri*, 72 F. Supp. 3d 401, 403-04 (S.D.N.Y. 2014) (determining that the defendant's circumstances did not warrant early termination in part because he "advanced no basis for his contention that 'the restrictions and general weight of supervised release' impede[d] his employment"); *United States v. Ogele*, No. CR 06-546 PJH, 2012 WL 6035537, at *2 (N.D. Cal. Dec. 4, 2012) (refusing to grant early termination in part because the defendant "offer[ed] no details of prospective business opportunities" and failed to "explain why fulfilling his term of supervised release would inhibit

his ability to make a reasonable living"). Importantly, a defendant's disclosure of a legitimate "potential employment opportunity" is not necessarily sufficient to warrant early termination. *See United States v. Silverio*, No. 99-CR-1044 (LDH), 2022 WL 493177, at *4-5 (E.D.N.Y. Feb. 17, 2022) (concluding that the defendant's participation in the "pre-employment process" with a prospective employer did not outweigh the court's other considerations under the Section 3553(a) factors).

According to Broussard's Presentence Report ("PSR"), prepared on September 11, 2023, her offense of conviction entails possession of a firearm by a felon. On August 14, 2022, two Beaumont Police Department officers attempted to conduct a traffic stop on a vehicle being driven by Broussard for having an expired license plate. Broussard failed to stop for nearly one mile and was subsequently arrested for fleeing from a police officer. The officers discovered crack cocaine in the vehicle. During her intake at Jefferson County Jail, Broussard was found to have a fully loaded Jennings Firearm, Model J22, .22 caliber pistol concealed in the front of her underwear. Broussard had been convicted of a prior felony offense and, therefore, was prohibited from possessing a firearm.

Broussard's criminal history includes two prior convictions for driving while intoxicated with a child under the age of fifteen as well as other convictions for driving while intoxicated, failure to identify, and violating the civil rights of a person in custody. In addition, she failed to comply with two previous terms of probation, resulting in their revocation. On April 14, 2003, Broussard's one-year term of probation was revoked due to her violating the terms of her probation by refusing to attend drug counseling, failing to remain in a residential program, and failing to pay supervision fees. On July 13, 2012, Broussard's five-year term of probation was

similarly revoked due to her committing a new offense, admitting to using marijuana on April 18, 2012, failing to meet her community services hours, failing to abide by her curfew, and failing to fulfill her financial responsibilities.

Broussard has a long history of substance abuse. While on supervised release for her offense of conviction, she has successfully completed a substance abuse treatment program and a random drug testing program. She continues to attend mental health counseling sessions.

Broussard, however, has not maintained full compliance with the terms and conditions of her release. On January 6, 2026, a probation officer in the Northern District of Texas reported that Broussard was in an unauthorized relationship with Nyree Burdine ("Burdine"), who has a prior felony conviction and was also on supervised release, and that Burdine was attempting to move from the Northern District of Texas to this district to live with Broussard. The relationship began when they were housed at the same unit while in custody of the Bureau of Prisons prior to beginning their respective terms of supervised release. Eastern District of Texas General Order 17-3, which adopts the standard conditions of supervision, provides: "[i]f you know someone has been convicted of a felony, you must not knowingly communicate or interact with that person without first getting the permission of the probation officer." The standard conditions of supervision were disclosed in Broussard's PSR and are included in her judgment.[3] Broussard did not have permission from her probation officer to be in a relationship with Burdine. Broussard failed to disclose the relationship either to her probation officer in this district or to Burdine's probation officer in the Northern District of Texas. On June 16, 2026, the United States Marshals

---

[3] Probation notes that Broussard previously signed a copy of her judgment acknowledging the conditions of supervision, reviewed those conditions during intake, and again reviewed the conditions with her probation officer in January 2026, after the relationship was reported.

Service reported to the Probation Office that Burdine had been arrested on June 4, 2026, at Broussard's residence in the Beaumont area on a warrant out of the District of Nebraska. During this incident, Broussard was questioned by law enforcement but failed to report this contact with law enforcement to her probation officer as required under the conditions of her supervised release.

Moreover, when a probation officer questioned Broussard about her contact with Burdine, Broussard stated that Burdine had moved in with family in the Beaumont area and that she was just visiting Broussard. Yet, the Northern District of Texas probation officer confirmed that Burdine has no family in the Beaumont area. Broussard's apparently untruthful explanation is consistent with the lack of candor she displayed when stating that she was unaware she could not be in a relationship with someone with a prior felony conviction and that she did not know she had to inform the Probation Office when having contact with law enforcement.

Regarding her employment, Broussard claims that she holds a commercial driver's license. Probation confirms that Broussard has maintained full-time employment since her release from custody. Broussard seeks early termination in order to "look into starting a new career" as a tankerman, which she maintains would require travel and being on vessels. Broussard, however, appears to rely on aspirations and speculation, as she has not provided any specific examples or evidence of sought after or denied employment opportunities due to her travel restrictions. Instead, she expresses mere interest in a prospective career change. Broussard also has not pointed to any instances where she submitted a request to travel to her probation officer and was denied. Thus, Broussard has not shown that the terms of her supervised release hinder her ability to make a reasonable living.

In this situation, the court finds that Broussard's post-release conduct does not warrant early termination of her supervised release. Broussard has again failed to comply fully with the terms of her release and identifies no new or exceptional circumstances or needs that would merit early release from supervision. While her achievements to date should be commended, continuing Broussard on supervision will provide her the best opportunity for success in reentry in view of her reported violations during this term of supervised release, her criminal history, her failure to comply with previous terms of parole, and her history of substance abuse. Requiring Broussard to complete her entire three-year term of supervised release safeguards against the reoccurrence of criminal activity and drug use, while imposing only a limited burden on Broussard.

Generally, early termination of supervised release is not granted unless there are significant medical concerns, substantial limitations on employment, or extraordinary post-release accomplishments that would warrant such a release. Broussard does not identify any such circumstances in her motion and is instead seeking early termination of her supervision due to her purported compliance with the conditions imposed by the court and her interest in a prospective career change. Therefore, although Broussard appears to be on the right path, the court believes that completion of her full term of supervised release appropriately reflects the seriousness of her offense, deters future criminal conduct, and provides needed structure for her continued rehabilitation. *See Lynn*, 2022 WL 2446328, at *4. "Supervised release is meant as a safety net to support reentry into the community." *Bondy*, 2026 WL 1282742, at *3. In this instance, there is no reason to terminate this safety net prematurely as to Broussard. "Allowing U.S. Probation to continue to monitor and guide [Broussard] is advantageous as it is able to offer resources, guidance and accountability to [Broussard] to ensure [s]he successfully continues [her]

rehabilitation journey." *United States v. Clausell*, No. 1:20cr0091-LG-RPM-1, 2026 WL 1008154, at *2 (S.D. Miss. April 14, 2026).

As Probation points out with regard to Broussard:

> It should be noted that she has considerable criminal history involving multiple prior felony convictions and revocation of earlier supervision terms. She has a prior conviction of violation of civil rights of person in custody and two prior convictions of driving while intoxicated with a child under the age of 15 and other criminal conduct. Ms. Broussard appears to have remained lawful since her most recent release from imprisonment; however, her probation violations suggest a heightened risk for recidivism. . . . In review of Ms. Broussard's case, there is no reference to any extraordinary accomplishments or compelling reasons for granting the motion at this time. Moreover, she has not maintained compliance during this term of supervised release as indicated in earlier violation reports. Given the extent of her violations and prior criminal activity, and lack of any compelling justification for early termination, our office respectfully recommends the Court deny this motion for early termination and continue the supervision term through the current expiration date.

The court concurs with the assessment of the situation by the Probation Office and finds that the early termination of Broussard's three-year term of supervised release would not serve the interest of justice.

III. Conclusion

In accordance with the foregoing, Broussard's Motion for Early Termination of Supervised Release (#37) is DENIED.

SIGNED at Beaumont, Texas, this 13th day of October, 2026.

Marcia A. Crone

MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE